[Crim. No. 22054. Jan. 17, 1983.]

In re RODELL KELLY, JR., on Habeas Corpus.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Mark E. Cutler, Chief Assistant State Public Defender, for Petitioner.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Gregory W. Baugher, Jana L. Tuton, Ramon de la Guardia and Wanda Hill Rouzan, Deputy Attorneys General, for Respondent.

OPINION

**BROUSSARD, J.**—At issue in this case is the interpretation of Penal Code section 667.5, subdivision (g),[1] which defines "prior separate prison term" for the purpose of enhancing a sentence.

The facts in this case are fairly simple. Petitioner was first committed to state prison in 1958 for violation of section 211. He was paroled, but in 1962 was committed to prison on a second new offense, violation of section 12021, and had his parole revoked. He was again paroled, but in 1967 he was committed to prison on a third new offense, violation of section 12021, and had his parole revoked. He was again paroled, but in 1973 he was committed to prison on a fourth new offense, violation of section 12021, and had his parole revoked. He was again paroled, but subsequently committed to prison on the present new offenses, violation of sections 245, subdivision (a), 12022, subdivision (b) and former section 273d.[2]

In the present case, petitioner had admitted his prior convictions, and received four additional years as enhancements pursuant to section 667.5, subdivision (b).

Petitioner appealed his conviction, which was affirmed by the Court of Appeal. He then sought relief on habeas corpus to strike his priors (not pursued on appeal). We issued an order to show cause returnable to the Court of Appeal, which upheld the enhancements. We thereafter granted a hearing.[3]

Petitioner urges that we accept the dissent in *In re Jessup* (1980) 109 Cal.App.3d 161 [167 Cal.Rptr. 98], and the result in *People* v. *Cole* (1979) 94 Cal.App.3d 854 [155 Cal.Rptr. 892], and hold that he has not served a "prior separate prison term" under the meaning of subdivision (g) of section 667.5 because he has essentially been serving one continuous prison term. We reject these arguments, and instead affirm the judgment of the superior court.

The interpretation of subdivision (g) of section 667.5 has been the subject of much discussion in the Courts of Appeal. This subdivision currently reads as follows: "A prior separate prison term for the purposes of this section shall mean a continuous completed period of prison incarceration imposed for the particular offense alone or in combination with concurrent or consecutive

---

[1]Unless otherwise indicated, all references are to the Penal Code.

[2]Apparently petitioner's parole was not revoked in the last instance. Rather, on February 10, 1978, his parole was terminated and he was discharged on the fourth case.

[3]We ordered the release of the petitioner on his own recognizance on June 30, 1982.

sentences for other crimes, including any reimprisonment on revocation of parole which is not accompanied by a new commitment to prison, and including any reimprisonment after escape from such incarceration."

It was originally held in *People* v. *Cole, supra,* 94 Cal.App.3d 854 that, under subdivision (g), a prisoner who had his parole revoked while receiving a new commitment was not subject to an enhancement for the offense for which he had been on parole. That holding has been rejected in every Court of Appeal case which has followed, beginning with *People* v. *Espinoza* (1979) 99 Cal.App.3d 59 [159 Cal.Rptr. 894]. (See *People* v. *Sutton* (1980) 113 Cal. App.3d 162 [169 Cal.Rptr. 656]; *People* v. *Harvey* (1980) 112 Cal.App.3d 132 [169 Cal.Rptr. 153]; *In re Jessup, supra,* 109 Cal.App.3d 161; *People* v. *Butler* (1980) 104 Cal.App.3d 868 [162 Cal.Rptr. 913], *repudiating its earlier decision in People* v. *Cole, supra,* 94 Cal.App.3d 854; *People* v. *James* (1980) 102 Cal.App.3d 728 [162 Cal.Rptr. 548]; *People* v. *Mathews* (1980) 102 Cal.App.3d 704 [162 Cal.Rptr. 615]; *People* v. *Welge* (1980) 101 Cal.App.3d 616 [161 Cal.Rptr. 686].)

We agree with the result in *Espinoza* and its progeny. Our main premise centers around the use of the word "period" (of "continuous completed *period* of prison incarceration") in subdivision (g). This word indicates some definite block of time: "*An interval of time* characterized by the occurrence or prevalence of certain conditions or events;" "*An interval* regarded as a developmental phase; stage;" "*A point or portion of time* at which something is ended." (American Heritage Dict. (5th ed. 1979) p. 527; italics added.) The words which follow "period" modify that term, i.e., they describe what may or may not be included in this particular time period. Thus, "including any reimprisonment on revocation of parole which is not accompanied by a new commitment to prison" is merely a prepositional phrase which modifies "period."

It follows from this analysis that a prisoner who is incarcerated on both a parole revocation and a new commitment is subject to an enhancement for the offense for which he was on parole. This conclusion, which has also been reached by the Community Release Board, upholds the obvious legislative intent of the 1977 amendment to subdivision (g), and circumvents certain absurdities which would result from a contrary interpretation.

To summarize, our interpretation of subdivision (g) is as follows: a prior separate prison term is defined as that time period a defendant has spent actually incarcerated for his offense prior to release on parole. In addition, if the defendant has violated his parole and has been sent back to prison, but has not received a new commitment, that time block is deemed to be continuing. If defendant has been returned with the addition of a new commitment, however,

the time block is not continued, and only that portion of prison time spent prior to release on parole constitutes the prior separate prison term.

## DISCUSSION

As originally enacted in Statutes 1976, chapter 1139, section 268, section 667.5, subdivision (g) read as follows: "A continuous completed period of prison incarceration imposed for the particular offense alone or in combination with sentences for other counts or sentences to be served concurrently or consecutively therewith *including any reimprisonment on revocation of parole* or new commitment for escape from such incarceration shall be deemed a single prior separate term for the purposes of this section." (Italics added.) Thus, under the old statute, any parole time spent in prison was to be included in the "period" which needed to be "completed" for enhancement purposes. The original purpose was to prevent the prosecutor from splitting the original imprisonment period from the reimprisonment period and thus into two separate priors: if a prisoner was returned to prison on parole violation, or violation with new commitment, he was still deemed to be serving one sentence.

Apparently this was not the complete intent of the Legislature, which in Statutes 1977, chapter 165, section 13 amended section 667.5, subdivision (g) to its current form, to *differentiate* between a mere revocation of parole, and the revocation of parole which is accompanied by a new commitment. It must be inferred that the Legislature desired the revocation accompanied by a new commitment *not* to count in the "period of prison incarceration" for the offense for which parole was revoked; instead, this *new* "period of prison incarceration" should be counted as a *new* term based on the *new commitment*. Thus, it is clear that the Legislature intended to amend subdivision (g) to provide for an enhancement when a prisoner is returned to prison on revocation of parole and, at the same time, is incarcerated for a new offense.[4]

Petitioner's theory cannot square with this legislative intent. If we were to accept his theory, we would leave unexplained the rationale for the 1977 amendment: it would simply be without any intrinsic value.

---

[4]In contrast, the 1977 amendment did not intrinsically change the phrase referring to reimprisonment after escape, which now reads: ". . . and including any reimprisonment after escape from such incarceration." The only difference is that this phrase is no longer interrupted by the parole revocation wording. There is no qualifying phrase such as "which is not accompanied by a new commitment to prison." Nevertheless, petitioner argues that the escape situation is analogous to the case at bar, and thus *People* v. *George* (1980) 109 Cal.App.3d 814 [167 Cal.Rptr. 603] (period of incarceration is incomplete when prisoner escapes and cannot be counted for enhancement purposes) is controlling. It is obvious, however, that the Legislature intended to differentiate between the escape and parole situations (and amend one and not the other). Thus, *George* is inapplicable to the case at bar.

In fact, the result of petitioner's theory would amount to absurdity. This petitioner has been incarcerated five times since 1958 for various crimes. The first four times he was paroled, committed a new crime, had his parole revoked, and was committed concurrently on a new offense. Yet, under petitioner's theory, he would suffer no *enhancements* for this series of crimes. Petitioner is just the sort of example that the Legislature had in mind when it set up its scheme to inflict additional punishment for repeat offenders.

A further absurdity would follow should we accept petitioner's theory: "[O]ne who faithfully obeyed the law while on parole and successfully served his or her parole without revocation would have 'completed' his or her prior prison term and would be subject to an enhancement of sentence if subsequently convicted of a felony; whereas one who committed another felony while on parole and whose parole was revoked on that account would not be subject to an enhancement of sentence with respect to the subsequent conviction. One of the primary purposes for the enactment of the determinate sentencing law and the entire legislative purpose in providing for enhanced sentences on account of prior convictions was to increase the penalties incurred by repeat offenders and thus, hopefully, deter recidivism. It is inconceivable that the Legislature intended to provide harsher treatment for a felon who has faithfully and successfully served his or her parole than for a felon who has committed yet another felony while on parole." (*People* v. *Espinoza, supra,* 99 Cal.App.3d 59, 73-74.)

Petitioner claims that the enhancement would subject him to double punishment, because he might receive a sentence of a year for parole revocation itself. He relies on section 3057, which provides as follows: "(a) Confinement pursuant to a revocation of parole *in the absence of a new conviction and commitment to prison* under other provisions of law, shall not exceed twelve months." (Italics added.) Unfortunately, petitioner has failed to read the statute; it only applies when the parolee is *not* committed to prison on a new conviction. Thus, this section is irrelevant and fails to advance petitioner's policy theory.

Section 3000 is consistent with the theory that the Legislature deliberately chose the word "period" (in a phrase "continuous completed *period* of prison incarceration") to mean a specified portion of time, a concept altogether different from other words employed by the Legislature such as "custody," "term" or "sentence." For example, section 3000 begins as follows: "The Legislature finds and declares that the *period immediately following incarceration* . . . ." (Italics added.) This shows a definite intention on the Legislature's part to differentiate between the time block of incarceration and the time block following incarceration (parole). Other language from section 3000 lends the same interpretation: "A sentence pursuant to Section 1168 or 1170 shall include a *period of parole* . . . . [¶] (a) . . . the inmate shall be released on parole for a *period* not exceeding three years . . . . [¶] (d) . . . maximum statutory

*period* of parole . . . and shall be a *period* chronologically determined. Time during which parole is suspended because the prisoner has absconded *or has been returned to custody as a parole violator* shall not be credited toward such *period of parole* . . . ." (Italics added.) The latter sentence is particularly illuminating: time served upon return to custody is defined as not being a part of a particular *period.* This is no different from our interpretation of section 667.5, subdivision (g) that time served upon revocation of parole that is accompanied with a new conviction is not a part of the *period* of prison incarceration.

Petitioner nevertheless urges that we focus on the word "completed" ("continuous *completed* period of prison incarceration"). He claims that section 667.5, subdivision (d) is controlling in this regard. Subdivision (d) provides as follows: "For the purposes of this section the defendant shall be deemed to remain in prison *custody* for an offense until the official discharge from such custody or until release on parole whichever first occurs including any time during which the defendant remains subject to reimprisonment for escape from such custody or is reimprisoned on revocation of parole . . . ." (Italics added.) Thus, petitioner argues that since *custody* includes both prison and parole revocation time, the "prior separate prison term" in subdivision (g) cannot be "completed" until all parole revocation time is served, regardless of whether that time is being served concurrently, with a new commitment. Since the term is not "completed," petitioner cannot be subject to enhancements. Petitioner argues that although the Legislature did not use the word "custody" in subdivision (g), it is nevertheless implied because subdivision (d) defines the word "for the purposes of this *section,*" i.e., section 667.5 as a whole.

First of all, "for the purposes of this section" does not necessarily mean that subdivision (d) has relevancy to every subdivision in section 667.5. Rather, its purpose is to define the word "custody" for those subdivisions which employ it. To require the Legislature to include "custody" or its import to every single subdivision, even if there is no relevance to the substance of that particular subdivision, would be an absurd and intolerable burden. Thus, it does not necessarily follow that subdivision (d) has any relevance to the interpretation of subdivision (g).

Second, if "custody" were the essential equivalent of "term" (of "prior separate prison term"), the Legislature would have had no reason to define "prior separate prison term" in subdivision (g). Since the Legislature did choose to define both terms, and define them differently, it is clear that they cannot be used interchangeably.[5]

---

[5]The current forms of subdivision (d) and subdivision (g) were both enacted in Statutes 1977, chapter 165, section 13.

Third, it is logically apparent that subdivision (d)'s definition of "custody" is relevant solely to subdivisions (a) and (b) in determining whether ten or five years had passed since a defendant had been "free" of "custody"; if so, an enhancement may not be imposed: "no additional term shall be imposed . . . *for any prison term* served prior to a period of [10/5] years in which defendant *remained free of . . . prison custody . . . .*" (Italics added.) Petitioner unfortunately equates this usage of "prison term" with the usage of "prison custody," then urges that "term" in subdivision (g) must likewise be the equivalent of "custody." It is clear, however, from a plain reading of subdivisions (a) and (b) that "prison custody" *modifies* the meaning of "prison term," for limited purposes only. If the words imported the same meaning, the Legislature would not have chosen to use both; nor would it have taken pains to modify one term with the other. Thus, we conclude that "term" and "custody" are not equivalent, and that "term" as used in subdivision (g) does *not* import the meaning of "custody" as described in subdivision (d).[6]

Nor is "period of prison incarceration" equivalent to "custody" as defined in subdivision (d). "Custody" simply refers to control of the petitioner by the authorities. "Period of prison incarceration," on the other hand, refers to a block of time actually spent in an incarcerating facility. This block of time may or may not include time spent in the facility upon revocation of parole—if in accompaniment to a new commitment, it would not. "Custody" is a much broader concept.

Petitioner nevertheless argues that "custody" is somehow relevant to the word "completed" in subdivision (g). As discussed above, however, it cannot be equivalent to "term," nor to "period." Even if "custody" were somehow related to "term," it would still be irrelevant to "completed" because "completed" modifies "*period,*" and not "term." The logical interpretation of "completed" is that it is an adjective describing a subjective complement (predicate noun): "period." "Term," on the other hand, is the subject of the sentence. Thus, whether the *period* of the *actual prison incarceration* has been completed is the issue—*not* whether the entire prison *sentence* has been completed.

---

[6]Petitioner also argues that the Legislature has used "custody" elsewhere in the Penal Code in the same sense as "term." He cites section 3056 as an example: "Prisoners on parole shall remain under the legal custody of the department and shall be subject at any time to be taken back within the inclosure of the prison." Yet, the Legislature also made extensive use of the word "term" in other sections: "Department of Corrections shall have the authority to reduce the *term* prescribed . . . for good behavior . . . ." (§ 2931.) "At the expiration of a *term* of imprisonment . . . the inmate shall be released on parole . . . ." (§ 3000, subd. (a).) (Italics added.) Also, the word "period" is used extensively in section 3000 (see text, *ante.*) Thus, it is clear that the words "custody," "term" and "period" are not synonymous: their differing uses by the Legislature were deliberate.

It is helpful at this point to examine the nature of the phrase "including any reimprisonment on revocation of parole which is not accompanied by a new commitment to prison." This is a prepositional phrase which also describes "period." Thus, "period of prison incarceration" must be equivalent to the original prison sentence minus good time credits that a prisoner serves prior to release on parole. The modification of "period" by the "including" prepositional phrase provides for an addition to this base period of time spent in prison upon revocation of parole, but only if this time is not also spent on a new commitment. If there is a new commitment that accompanies a revocation of parole, it is not added to the base "period of prison incarceration."

Therefore, "custody" has no relevance to "completed." All "completed" refers to is whether that base prison period, prior to parole, and possibly upon revocation of parole (but only if not accompanied by a new commitment), has been served.

Petitioner next argues that an inmate reimprisoned on revocation of parole, whether or not accompanied by a new commitment, is still *serving* the prison term. Since he is still *serving* the term, it cannot be said to be *completed*. Petitioner looks to subdivision (h) for support: "Serving a prison term includes any confinement time in any state prison or federal penal institution as punishment . . . including confinement in a hospital or other institution or facility credited as service of prison time in the jurisdiction of such confinement."[7]

Petitioner unfortunately misconstrues the purposes of subdivision (g) and subdivision (h) to section 667.5. Subdivisions (a) and (b) refer to imposition of an extra term "for each prior separate prison term served by the defendant . . . ." Subdivision (e) provides that an enhancement "shall not be imposed for any felony for which the defendant did not serve a prior separate term in state prison." What does "prior separate term" mean? What does "serve" mean? The answer to these questions is the function of subdivision (g) and (h): subdivision (g) defines "term," and (h) defines "serve." Yet, the two subdivisions are conceptually different. Subdivision (g) discusses "completed" in the context of *"period,"* i.e., that relevant *portion of time* of incarceration. Subdivision (h), on the other hand, refers to the *physical surroundings* which may constitute incarceration, i.e., what kind of facility a prisoner was in, or whether it was in California or elsewhere in the United States. In other words, subdivision (g) deals with the *when,* and subdivision (h) deals with the *where.* Neither subdivision is relevant to the other, particularly in the context which petitioner urges.

---

[7]This argument is also advanced by the dissent in *In re Jessup, supra,* 109 Cal.App.3d 161, 168.

Petitioner also argues that the 1977 amendment to section 1170, subdivision (a)(2) (Stats. 1977, ch. 165, § 15) supports his theory that "prior separate prison term" must necessarily include *all* times spent incarcerated, including for revocation of parole.[8]

Section 1170, subdivision (a)(2) reads in part as follows: "In any case in which the amount of preimprisonment credit under Section 2900.5 or any other provision of law is equal to or exceeds any sentence imposed pursuant to this chapter, the entire sentence, including any period of parole under Section 3000, shall be deemed to have been served and the defendant shall not be actually delivered to the custody of the Director of Corrections. However, any such sentence shall be deemed a separate prior prison term under Section 667.5 . . . ." Petitioner only quotes part of the latter, and does so completely out of context. Read as a whole, however, it becomes plain that this language refers to what constitutes a prior when the defendant is sentenced to time equal to what he has *already served.* That is, the sentence has already been completed in its entirety at the time of sentencing; thus, it is "deemed a prior prison term under Section 667.5."

Furthermore, this language damages rather than furthers petitioner's position. "Including any *period* of parole" merely describes what can constitute a part of "the entire *sentence.*" Thus, we can deduce the following equation: *period* of imprisonment + *period* of parole = *sentence.* Therefore, it is easily seen that the Legislature's use of the word "period" is consistent with our view that "period" refers to a particular *portion* of time.

Our interpretation of subdivision (g) of section 667.5 is supported by the regulations of the Community Release Board. Section 2154, subdivision (b)(2) of title 15 of the California Administrative Code provides as follows: " 'Prior prison term' is a prior felony conviction which resulted in a continuous completed period of prison incarceration imposed for the particular crime alone or in combination with sentences for other crimes or commitments (whether concurrent or consecutive) received before release on parole. If the person was returned to prison to finish term, for a parole violation or with a new commitment for escape, the period will count as a single prior prison term. *However, if the person was returned to prison with a new term, the new term will count as a second prior prison term, even if parole was incidentally revoked.*" (Italics added.)

---

[8]This is another argument also advanced by the dissent in *In re Jessup, supra,* 109 Cal.App.3d 161, 167.

■ We give great deference to the interpretation of a statute by an administrative body authorized to promulgate regulations to promote its purposes, unless that interpretation is clearly erroneous. (See *Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668 [150 Cal.Rptr. 250, 586, P.2d 564]; *Wilkinson* v. *Workers' Comp. Appeals Bd.* (1977) 19 Cal.3d 491, 501 [138 Cal.Rptr. 696, 564 P.2d 848]; *Rivera* v. *City of Fresno* (1971) 6 Cal.3d 132, 140 [98 Cal.Rptr. 281, 490 P.2d 793]; *Mudd* v. *McColgan* (1947) 30 Cal.2d 463, 470 [183 P.2d 10]; *Bodinson Mfg. Co.* v. *California Employment Commission* (1941) 17 Cal.2d 321, 325-326 [109 P.2d 935].)

■ *People* v. *Cole, supra,* 94 Cal.App.3d 854 is therefore disapproved. We note that even its own authors have abandoned it. (See *People* v. *Butler, supra,* 104 Cal.App.3d 868.) Without any discussion, *Cole* simply announced that "defendant's reimprisonment upon revocation of parole on the arson prior *was* accompanied by the new commitment for his conspiracy and pimping conviction, hence reimprisonment is not a 'prior separate prison term' and may not be used to enhance defendant's sentence." (*Cole, supra,* at p. 866; italics in original.) In other words, *Cole* held that a prior prison term can only be one that includes time spent incarcerated for parole violation—if parole violation is accompanied by a new commitment, there is no prior at all. Apparently the Court of Appeal erroneously read the prepositional phrase "including any reimprisonment on revocation of parole which is not accompanied by a new commitment to prison" as modifying "prior separate prison term," the subject of the sentence, rather than "period," the subjective complement (predicate noun). This is a grammatical error and fatal to *Cole's* analysis.[9]

CONCLUSION

Our conclusion is the same as that of an overwhelming number of Court of Appeal cases, as well as that of the Community Release Board to whom we give deference. We therefore affirm the sentence of the superior court of the four years of enhancements for four prior separate prison terms. The petition for habeas corpus is denied and petitioner is ordered returned to the custody of the Director of Corrections to complete the period of prison incarceration pursuant to his sentence.

---

[9]The dissent in *In re Jessup, supra,* 109 Cal.App.3d 161, 165-166, also makes a grammatical error. In footnote 4, the dissent urges that the "including any reimprisonment" phrase modifies "imposed for the particular offense alone or in combination with concurrent or consecutive sentences for other crimes." This simply does not make sense. "Imposed" modifies "period"; so must "including." "Generally, a qualifying phrase applies to the word, phrase or clause immediately preceding it, *unless context or evident meaning require a different construction.* [Citations.]" (*People* v. *Cruz* (1974) 12 Cal.3d 562, 566 [116 Cal.Rptr. 242, 526 P.2d 250] italics added.)

Mosk, J., Richardson, J., Kaus, J., Brown, (G. A.), J.,* and Andreen, J.,* concurred.

Bird, C. J., concurred in the judgment.

---

*Assigned by the Chairperson of the Judicial Council.